IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
RICHARD W. NAGEL
CLERK OF C...
2018 OCT 16 PM 12: 06
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

| | |
|---|---|
| UNITED STATES OF AMERICA | No. |
| vs. | JUDGE 2:18 cr 216 |
| | Judge Marbley |
| BANMEET SINGH | 21 U.S.C. § 841(a)(1), (b), and (h) |
| | 21 U.S.C. § 846 |
| | 21 U.S.C. § 853 |
| | 21 U.S.C. § 963 |
| | 21 U.S.C. § 952 |
| | 21 U.S.C. § 960 |
| | 18 U.S.C. § 1956(h) |
| | FORFEITURE |
| | **UNDER SEAL** |

## INDICTMENT

**THE GRAND JURY CHARGES:**

At all times material to this Indictment:

### INTRODUCTION

1. Defendant **BANMEET SINGH** is an Indian citizen who resides in the United Kingdom, as a result of an entrepreneurial visa obtained by his wife.

2. In or after 2012, **BANMEET SINGH** established a transnational criminal organization responsible for distributing bulk quantities of various scheduled controlled substances throughout Europe and the United States.

1

## BACKGROUND

3. The "deep web" is the portion of the Internet not indexed by search engines, such as internal networks belonging to private industry, government agencies, or academic institutions. The "dark web" is a portion of the deep web that has been intentionally hidden and is inaccessible through standard web browsers. To access the dark web, individuals must use specialized software to access content and websites. Within the dark web, criminal marketplaces operate, allowing individuals to buy and sell illegal items, such as drugs, firearms, and other hazardous materials, with greater anonymity than is possible on the traditional Internet (sometimes called the "clear web" or simply the "web"). These online market websites use a variety of encryption technologies to ensure that communications and transactions are shielded from interception and monitoring. Famous dark web marketplaces ("DWMs"), also called "hidden services", such as Silk Road 1, Silk Road 2, AlphaBay, and Hansa (all of which have since been shut down by law enforcement), operated similarly to clear web commercial websites such as Amazon or eBay, but offered illicit goods and services.

4. "Vendors" are the dark web's sellers of goods and services, often of an illicit nature, and they do so through the creation and operation of "vendor accounts" on DWMs. Customers, meanwhile, operate "customer accounts." Vendor and customer accounts are not identified by numbers, but rather monikers or "handles," much like the username one would use on a clear web site. If a moniker on a particular marketplace has not already been registered by another user, vendors and customers can use the same moniker across multiple marketplaces, and based on seller and customer reviews, can become well known as "trusted" vendors or customers. It is also possible for the same person to operate multiple customer accounts and multiple vendor accounts at the same time. For example, one person could have a vendor account that he or she

2

uses to sell illegal goods on a dark web marketplace in exchange for cryptocurrency; that same vendor could also have a different customer account that he or she uses to exchange cryptocurrency earned from vendor sales for fiat currency. Because they are separate accounts, a person could use different accounts to send and receive the same cryptocurrency on the dark web. One of the reasons dark web vendors have multiple monikers for different vendor and customer accounts, is to prevent law enforcement from identifying which accounts belong to the same person, and who the actual person is that owns or uses the accounts.

5. Cryptocurrency, a type of virtual currency, is a decentralized, peer-to peer, network-based medium of value or exchange that may be used as a substitute for fiat currency to buy goods or services, or exchanged for fiat currency or other cryptocurrencies. Examples of cryptocurrency are bitcoin, litecoin, and ether. Cryptocurrency can exist digitally on the Internet, in an electronic storage device, or in cloud-based servers. Although not usually stored in any physical form, public and private keys used to transfer cryptocurrency from one person or place to another can be printed or written on a piece of paper or other tangible object. Cryptocurrency can be exchanged directly person to person, through a cryptocurrency exchange, or through other intermediaries. Generally, cryptocurrency is not issued by any government, bank, or company; it is instead generated and controlled through computer software operating on a decentralized peer-to-peer network. Cryptocurrencies operate on a "blockchain," which is a distributed public ledger, run by a decentralized network, containing an immutable and historical record of every transaction.

6. Bitcoin is a type of cryptocurrency. Payments or transfers of value made with bitcoin are recorded in the bitcoin blockchain and thus are not maintained by any single administrator or entity. Individuals can acquire bitcoin through mining, exchanges (i.e., online companies which allow individuals to purchase or sell cryptocurrencies in exchange for fiat

3

currencies or other cryptocurrencies), bitcoin kiosks (similar to ATMs), or directly from other people. Individuals can send and receive cryptocurrencies online using many types of electronic devices, including laptop computers and smart phones. Even though the public addresses of those engaging in cryptocurrency transactions are recorded on a blockchain, the identities of the individuals or entities behind the public addresses are not recorded on these public ledgers. If, however, an individual or entity is linked to a public address, it may be possible to determine what transactions were conducted by that individual or entity. Bitcoin transactions are therefore sometimes described as "pseudonymous," meaning that they are partially anonymous. And while it's not completely anonymous, bitcoin allows users to transfer funds more anonymously than would be possible through traditional banking and credit systems.

7. Utilizing the dark web, **BANMEET SINGH** created vendor marketing sites on Silk Road 1, Silk Road 2, Alpha Bay, Hansa, and other DWMs, in order to sell controlled substances including, but not limited to, heroin, cocaine, fentanyl, lysergic acid diethylamide (LSD), 3,4-methylenedioxymethamphetamine ("ecstasy" or "MDMA"), Xanax, Ketamine, and Tramadol, in the Southern District of Ohio and elsewhere.

8. The DWMs include cryptocurrency-based payment systems that serve to facilitate the illegal commerce conducted on the site, including by concealing the identities and locations of the users transmitting and receiving funds through the sites. Customers who ordered controlled substances on DWMs from **BANMEET SINGH** paid for their purchase by transferring cryptocurrency, usually bitcoin, from their DWM customer accounts to one of **BANMEET SINGH's** vendor accounts.

9. Customers seeking to purchase controlled substances from **BANMEET SINGH** would place orders through his vendor marketing sites on DWMs and use emails, texts, and

encrypted messages to arrange the transactions. After receiving orders through his vendor marketing sites on DWMs, **BANMEET SINGH** would personally ship or arrange the shipment of controlled substances from Europe to the United States utilizing the U.S. Mail or other shipping services.

10. **BANMEET SINGH** has command and control of at least eight distribution cells located within the United States, in addition to distribution cells in other countries, including distribution cells in Columbus, Ohio, North Carolina, Washington, Maryland, North Dakota, New York, and Florida, among other places. The United States-based distribution cells consist of "re-shippers" who receive controlled substances, re-package them, and send them to where **BANMEET SINGH** directs, which includes locations across all 50 United States, Canada, Jamaica, the U.S. Virgin Islands, Scotland, England, and Ireland.

11. **BANMEET SINGH** paid his re-shippers by having his customers send funds, usually cash, cryptocurrency, or PayPal payments, directly to the re-shippers in lieu of paying **BANMEET SINGH** for the controlled substances they had purchased. Some re-shippers sent payments to each other, at **BANMEET SINGH'S** direction. **BANMEET SINGH** also paid some re-shippers in controlled substances.

## COUNT ONE
### Conspiracy to Distribute and Possess With Intent to Distribute Controlled Substances
### (21 U.S.C. § 846)

12. Beginning in mid-2012, through and including July 20, 2017, the exact dates being unknown, in the Southern District of Ohio and elsewhere, the defendant, **BANMEET SINGH**, did knowingly and intentionally conspire, confederate and agree with other persons, both known and unknown to the Grand Jury, to distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1), and to deliver, distribute, and dispense controlled substances by means of the Internet, in a manner not authorized by law,

5

in violation of Title 21, United States Code, Section 841(h).

13. The controlled substances involved in the offense include, among others, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin (a Schedule I controlled substance), 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine (a Schedule II controlled substance), 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) (a Schedule II controlled substance), a mixture and substance containing a detectable amount of amount of 3,4-methylenedioxymethamphetamine ("ecstasy" or MDMA) (a Schedule I controlled substance), a mixture and substance containing a detectable amount of Ketamine (a Schedule III controlled substance), and a mixture and substance containing a detectable amount of Tramadol (a Schedule IV controlled substance), all in violation of Title 21, United States Code, Sections 841(b)(1)(B) and (b)(1)(C).

All in violation of Title 21, United States Code, Section 846.

## COUNT TWO
### Conspiracy to Import Controlled Substances
### (21 U.S.C. §§ 952(a), 960(b)(2) and (b)(3), and 963)

14. The allegations contained in paragraphs 1 through 11 are hereby re-alleged and restated as though fully set forth herein.

15. Beginning in mid-2012, through and including July 20, 2017, the exact dates being unknown, in the Southern District of Ohio and elsewhere, the defendant, **BANMEET SINGH**, did knowingly and intentionally conspire, confederate and agree with other persons, both known and unknown to the Grand Jury, to import controlled substances into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 952(a).

16. The controlled substances involved in the offense include, among others, 1 kilogram or more of a mixture and substance containing a detectable amount of heroin (a Schedule

6

I controlled substance), 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine (a Schedule II controlled substance), 400 grams or more of a mixture and substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (fentanyl) (a Schedule II controlled substance), a mixture and substance containing a detectable amount of amount of 3,4-methylenedioxymethamphetamine ("ecstasy" or MDMA) (a Schedule I controlled substance), a mixture and substance containing a detectable amount of Ketamine (a Schedule III controlled substance), and a mixture and substance containing a detectable amount of Tramadol (a Schedule IV controlled substance), all in violation of Title 21, United States Code, Sections 960(b)(2) and (b)(3).

All in violation of Title 21, United States Code, Section 963.

### COUNT THREE
### Money Laundering Conspiracy
### (18 U.S.C. 1956(h))

17. The allegations contained in paragraphs 1 through 16 are hereby re-alleged and restated as though fully set forth herein.

18. From on or around mid-2012, and continuing through on or about April 19, 2018, within the Southern District of Ohio and elsewhere, defendant **BANMEET SINGH** did knowingly and intentionally combine, conspire, and agree with other persons known and unknown to the Grand Jury to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, conspiracies to distribute controlled substances and import controlled substances into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 841(a) and (h), 846, 952, 960, and 963, knowing that the transaction is designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such

financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

19. It was also a part and object of the conspiracy to transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States, and to a place in the United States from and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represent the proceeds of some form of unlawful activity, that is, conspiracies to distribute controlled substances and import controlled substances into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 841(a) and (h), 846, 952, 960, and 963, with the intent to promote the carrying on of specified unlawful activity, and knowing that such transportation, transmission, and transfer is designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, all in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 1956(a)(2)(B)(i).

## PURPOSES OF THE CONSPIRACY

20. It was a purpose of the conspiracy that co-conspirators designed, and **BANMEET SINGH** participated in, DWMs that included a cryptocurrency-based payment system that served to facilitate the illegal commerce conducted on the site, including by concealing the identities and locations of the users transmitting and receiving funds through the site.

21. It was also a purpose of the conspiracy that **BANMEET SINGH** would use the DWMs designed by his co-conspirators to launder the proceeds of his illegal narcotics distribution.

22. It was also a purpose of the conspiracy that **BANMEET SINGH** would move funds

to a place in the United States from and through a place outside the United States, in order to promote his TCO's distribution of controlled substances using the Internet.

## MANNER AND MEANS

23. The following were among the manner and means used by **BANMEET SINGH** and his co-conspirators to accomplish the objects of the conspiracy listed above:

24. **BANMEET SINGH** and his co-conspirators conducted wire transfers, transferred cryptocurrency, and shipped cash and controlled substances in the mail, from overseas to the Southern District of Ohio and elsewhere, to promote the specified unlawful activity, to wit: paying co-conspirators who served as "re-shippers" by accepting controlled substances in the mail and re-packaging and re-shipping the controlled substances to customers throughout the United States and elsewhere.

25. **BANMEET SINGH** also conspired with the respective administrators of each DWM to illegally distribute narcotics and launder the proceeds of that distribution.

26. **BANMEET SINGH** and the DWM administrators agreed to **BANMEET SINGH**'s use of darknet "handles" or "monikers", by which the defendant could anonymously sell illegal controlled substances on each DWM.

27. **BANMEET SINGH** and his co-conspirators used a cryptocurrency-based payment system that allowed hundreds of customers to illegally purchase controlled substances from the defendant, while concealing the nature, source, and location of those proceeds.

28. **BANMEET SINGH** and his co-conspirators used the anonymity of the DWM, and the anonymity of cryptocurrency, to move funds internationally to promote their distribution of controlled substances.

All in violation of Title 18, United States Code, Section 1956(h).

## FORFEITURE ALLEGATION

1. The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for the purpose of alleging forfeitures to the United States of America pursuant to 18 U.S.C. § 982(a)(1), 21 U.S.C. § 853(a)(1) and (2), and 21 U.S.C. § 970.

2. Upon conviction of any of the offenses alleged in Counts 1 through 3 of this Indictment, Defendant BANMEET SINGH shall forfeit to the United States, in accordance with 21 U.S.C. § 853(a)(1) and (2) (as incorporated by 21 U.S.C. § 970), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such offense and/or any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense.

3. Upon conviction of any of the offenses alleged in Counts 1 through 3 of this Indictment, Defendant BANMEET SINGH shall forfeit to the United States, in accordance with 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

4. Substitute Assets: If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 21 U.S.C.

§ 970 and 18 U.S.C. § 982(b), to seek forfeiture of any other property of Defendant BANMEET SINGH up to the value of the forfeitable property described above.

Forfeiture pursuant to 18 U.S.C. § 982(a)(1), 21 U.S.C. § 853(a)(1) and (2), 21 U.S.C. § 970, and Rule 32.2 of the Federal Rules of Criminal Procedure.

A TRUE BILL.

s/Foreperson
FOREPERSON


BENJAMIN C. GLASSMAN
United States Attorney

MICHAEL J. HUNTER
Deputy Criminal Chief,
Organized Crime Drug Enforcement Task Force
Assistant United States Attorney


BRIAN A. BENCZKOWSKI
Assistant Attorney General

AMANDA S. WICK
Trial Attorney, Money Laundering and
Asset Recovery Section
Criminal Division, U.S. Department of Justice